UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-435-GWU

HUANNA K. AKERS,                                                   PLAINTIFF,


VS.                              **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                       DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB).  The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity?
    If yes, the claimant is not disabled.  If no, proceed to Step 2.
    See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical
    or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
    claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any
    impairment(s) significantly limiting the claimant's physical or
    mental ability to do basic work activities?  If yes, proceed to
    Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
    404.1520(c), 404.1521, 416.920(c), 461.921.

06-435 Akers

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?   If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?   If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.   20 C.F.R. Section 404.1529 (1991).   However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1)

06-435 Akers

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

06-435 Akers

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Huanna K. Akers, was found by an Administrative Law Judge (ALJ) to have a "severe" impairment consisting of neck and back strain secondary to chronic strain and/or osteoarthritis. (Tr. 15). Nevertheless, based on the testimony of Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform her past relevant work, and therefore was not entitled to benefits. (Tr. 17-18). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 61, high school education with additional vocational training as a secretary, and work history as an "office manager" in a job that consisted primarily of typing could perform any jobs if she were limited to "light" level exertion, could not climb ladders, ropes, or scaffolds and could occasionally stoop, bend, and "should be restricted to jobs that do not require overhead lifting with either arm." (Tr. 205).

06-435 Akers

The VE responded that with these restrictions, the plaintiff's past work could be performed.  (Id.).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability due to a variety of conditions, including back, shoulder, and arm pain, in addition to glaucoma, a thyroid problem, and irritable bowel syndrome.  (Tr. 51, 192, 200).  However, the most recent records from the Southeastern Kentucky Eye Care Clinic show that her intraocular pressure was within normal limits (Tr. 131), and at a consultative examination in August, 2004, her vision was recorded as 20/20 in the right eye and 20/25 in the left eye (Tr. 146).  Nor did she present any evidence of restrictions due to irritable bowel syndrome or thyroid problems.

The plaintiff's primary complaint was of arthritis, which caused constant pain in the cervical and shoulder area, made it hard to turn her head, and made it difficult to use her hands overhead or in front of her body for any period of time.  (Tr. 192-4). She stated that this problem had made it difficult for her to type.  (Tr. 194).  She also had lower back pain which made it difficult to bend, although this problem was not as serious as the neck pain.  (Tr. 195).

Medical records in the transcript include an office note from Dr. Robert Hoskins dated July 23, 2004, at which time the plaintiff's complaints included neck

pain, lower back pain, and bilateral shoulder pain. (Tr. 151). Although a portion of Dr. Hoskins's treatment note appears to be missing, in that there is a gap between pages 2 and 3, the note does indicate tenderness over the cervical and lumbosacral spine (Tr. 152-3), and the physician recommended obtaining x-rays of the cervical, thoracic, and lumbosacral spine as well as a bone density scan (Tr. 153). His assessment was lumbago and cervicalgia. (Id.). He provided samples of Celebrex for pain and inflammation. On a follow-up examination dated August 27, 2004, the plaintiff reported that her low back pain had improved somewhat, and the medication had decreased her pain, but she still complained of continuous neck pain and continued bilateral shoulder pain and burning between the shoulder blades. (Tr. 148). Dr. Hoskins noted tenderness over the cervical and lumbar spine, left trapezius, and shoulder, and stated that the range of motion was "very decreased." (Tr. 149). It is not clear that x-rays or the bone scan had been obtained. He prescribed a different non-steroidal anti-inflammatory drug, Ketoprofen (Tr. 150) which the plaintiff testified that she was still using at the time of the administrative hearing in April, 2006 (Tr. 202).

Dr. Monte Edward Martin conducted a consultative physical examination on August 6, 2004. The plaintiff related a history of neck and shoulder pain among other problems, and Dr. Martin found "mild cervical lordosis" which was "awaiting radiological correlation from the film that is pending." (Tr. 146). He did not find any

06-435 Akers

limitations of range of motion, but assessed a "classic history of upper extremity pain" from what appeared to be osteoarthritis of the cervical spine. (Tr. 146-7). He stated that he found no current physical limitations but added that "having said this, I feel that this is a patient who is limited with excessive use of her upper extremities, such as tasks performing or requiring her to work above her shoulders and/or typing-related tasks that would require her to have frequent use of her upper extremities for greater than two or three hours a day." (Tr. 147). He suspected that the problem was currently controlled because she was not performing this type of task, and she was also on non-steroidal anti-inflammatory drug therapy which was helping to relive some of the symptomology. (Id.). He concluded that "Dr. Dahhan will dictate his cervical spine report from the film that will be shot today." (Id.).

However, the only report from Dr. A. Dahhan, which is dated the same day as Dr. Martin's examination, was a lumbosacral spine x-ray, rather than a cervical spine x-ray. (Tr. 143). It was read as being essentially negative. Therefore, it appears that, despite the intentions of the consultative examiner, the wrong type of x-ray was obtained.

Two state agency reviewing sources completed physical functional capacity assessments, although the first assessment was unsigned. (Tr. 154). This report does note that despite the complaints of cervical problems, there were no x-rays of the cervical spine. (Tr. 155-6). However, the report stated that, due to the decrease

of range of motion noted by the treating physician, Dr. Hoskins, and findings of tenderness in the cervical, lumbar, and shoulder areas, that reaching would be "limited to overhead only to occasionally." (Tr. 157). The unnamed source stated that Dr. Martin's opinion limiting the plaintiff from frequent use of her upper extremities for work above the shoulders and/or typing-related tasks for greater than two to three hours a day was "given little weight," but did not provide a rationale for disagreeing with the examining source. Subsequently, another state agency source, Dr. Jorge Baez-Garcia, affirmed the findings in the previous evaluation without additional comment. (Tr. 176-82). He indicated that there was no examining source conclusion about the plaintiff's limitations or restrictions that was significantly different from his findings. (Tr. 181).

Dr. Martin was the only examining source to express an opinion regarding functional capacity. Clearly, his restrictions would preclude a full-time job which consisted mostly of typing. The plaintiff's testimony that her past work primarily involved typing, although she was designated "office manager," is uncontradicted. (Tr. 189-90). Dr. Martin's restrictions would preclude the performance of her past work as she performed it, and the VE was not asked whether she could have performed this job as it exists in the national economy, or if it contained transferable skills. While the state agency sources indicated fewer restrictions, in that the plaintiff was limited to only in her ability to use her arms overhead, their opinions do not

11

06-435 Akers

provide substantial evidence to overcome that of Dr. Martin. Neither provided an explanation of why their opinions differed from the examiner. See Social Security Ruling 96-9p; Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). Therefore, a remand will be required on this issue.

The court also notes that the ALJ made reference to evidence from the plaintiff's treating chiropractor, limiting her to less than full-time work (Tr. 16, 18), but no report from this source is included in the court transcript. On remand, this report should be obtained and included in the event of a future appeal.

The decision will be remanded for further consideration.

This the 20th day of July, 2007.

Signed By:

G. Wix Unthank

United States Senior Judge

12